IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DIANA J. REITER                                                    PLAINTIFF

     V.                        CIVIL NO. 5:14-cv-5225-TLB-MEF

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                     DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Diana Reiter, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.  Procedural Background

Plaintiff protectively filed her application for DIB on April 14, 2011, alleging disability since October 1, 2010, due to chronic obstructive pulmonary disease (COPD) and emphysema. (Tr. 16, 172) For DIB purposes, Plaintiff retained insured status through December 31, 2014. (Tr. 18) An administrative hearing was held on May 8, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 32-65)

By a written decision dated September 13, 2012, the ALJ found Plaintiff's COPD, hypertension, and "history of hospitalizations for gastrointestinal disorders and pneumonia with associated general deconditioning" were severe impairments.  (Tr. 19) After reviewing all of the

-1-

evidence presented, the ALJ determined Plaintiff's impairments did not meet or equal the level of severity of any impairment in the Listing of Impairments. (Tr. 21) The ALJ then found Plaintiff had the residual functional capacity (RFC) to perform the full range of light work. (Tr. 21)

With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform her past relevant work (PRW) as an office helper, receptionist, medical records clerk, and complaint clerk. (Tr. 25-26) The ALJ concluded Plaintiff had not been under a disability as defined by the Act during the relevant time period. (Tr. 26)

Plaintiff requested a review of the hearing decision by the Appeals Council, which denied the request on May 8, 2014. (Tr. 1-3) Subsequently, Plaintiff filed this action July 14, 2014. (Doc. 1) Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 13, 14)

## II. Background.

On October 1, 2010, Plaintiff was admitted to the Mercy Medical Center for colitis, a gastric ulcer, hypertension, and dehydration. (Tr. 890-898) She was treated with fluids and antibiotics, and released since her colitis resolved and she reported "feeling remarkably good." (Tr. 897-898, 920)

Plaintiff was later diagnosed with bronchitis, a cough, and gastroenteritis on April 4, 2011. (Tr. 866) Her treating physician, Dr. Michael McGehee, prescribed antibiotics and encouraged Plaintiff to stop smoking. (Tr. 865-866) Plaintiff's condition became worse, however, and she was treated at the Northwest Medical Center beginning April 6, 2011, for pneumonia and COPD with fluids, antibiotics, and steroids. (Tr. 423-424) She was discharged on April 22, 2011, and her care was transferred to the Bradford House, an unskilled nursing facility. (Tr. 424) Plaintiff was treated again at the Northwest Medical Center from May 8, 2011, to May 10, 2011, for pneumonia and a

-2-

clostridium difficile infection and discharged back to Bradford House. (Tr. 411-412) On May 21, 2011, Plaintiff was seen at the Northwest Medical Center for diarrhea, vomiting, and nausea , which were symptoms consistent with a clostridium difficile infection. (Tr. 521) After her treatment at the hospital, records indicate Plaintiff remained at Bradford House until the end of May 2011. (Tr. 725)

On June 6, 2011, Plaintiff was examined by Dr. Mary Sonntag, a consulting psychiatrist. (Tr. 807-811) Plaintiff reported she had never received mental health treatment except for taking an antidepressant. She explained:

> There is nothing mentally wrong with me. I would like to go back to work. I'm mad because I can't go back to work. (Tr. 807)

Plaintiff also shared she "needed no assistance with ADL's," and Dr. Sonntag noted, "there were no pain indicators present." (Tr. 808) According to Dr. Sonntag, Plaintiff did not qualify for a mental diagnosis and had no problem with adaptive functioning. (Tr. 810)

On June 10, 2011, Plaintiff underwent a consultative pulmonary exam. (Tr. 813-817) According to Dr. Edward Jackson, a consulting physician, Plaintiff's spirometry results were normal. (Tr. 814) Plaintiff was also treated on June 11, 2011, for clostridium difficile symptoms and discharged home. (Tr. 825-826)

On July 6, 2011, Plaintiff was seen at the Care Clinic at John Brown University for a counseling session, where she primarily discussed her financial problems. (Tr. 874) Plaintiff returned to the Care Clinic two weeks later for her follow-up, but declined future counseling during the session. (Tr. 872-873) Dr. Kay Gale, a non-examining consultant, completed a mental case analysis and psychiatric review technique on July 8, 2011, and opined Plaintiff's mental impairments were not severe. (Tr. 844-856)

Plaintiff was examined by Dr. Tad Morgan, a consulting physician, in July 2011. (Tr. 858-832) Plaintiff's abdomen and lung exams were normal. (Tr. 859-860) Dr. Morgan also noted Plaintiff's range of motion in her extremities, reflexes, and limb functions were normal, although she had reduced range of motion in her neck and spine, and her muscle strength was somewhat limited from "general deconditioning." (Tr. 860-861) According to Dr. Morgan, Plaintiff's only diagnosable condition was a history of COPD, and she had a mild restriction in her abilities to walk and stand, or lift and carry objects. (Tr. 861-862)

On July 14, 2011, Plaintiff saw Dr. McGehee to have her Celexa refilled and asked for "a note for her return to work." (Tr. 864) Dr. McGehee noted Plaintiff's blood pressure was normal and she had stopped taking Lisinopril, prescribed Spiriva for her COPD, and released her to return to work. (Tr. 864-865)

Dr. Judith Forte, a non-examining consultant, completed a case analysis on July 18, 2011, and opined Plaintiff did not have a severe impairment, which was affirmed by Dr. Julius Petty in September 2011. (Tr. 872, 885) On September 20, 2011, Dr. Winston Brown, a non-examining consultant, submitted a mental case analysis and affirmed Dr. Gale's opinion that Plaintiff did not have a severe mental impairment. (Tr. 880)

### III. Applicable Law.

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider

evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require the application of a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § 404.1520(a)(4). Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

## IV.  Discussion

Plaintiff argues the ALJ: (1) improperly considered the evidence; (2) should have included arthritis as a severe impairment; (3) did not apply a proper *Polaski* analysis; and, (4) did not base the RFC assessment on substantial evidence. (Doc. 13, pp. 7-10)

### A. Consideration of the Record

Plaintiff argues "it is abundantly clear" the ALJ "had apparently made up his mind about this case before Plaintiff testified" since the ALJ had only one question for the VE at the hearing. (Doc. 13, p. 12)

A claimant has the burden to show sufficient evidence to overcome the presumption that the ALJ acted fairly and impartially. *Perkins v. Astrue*, 648 F.3d 892, 903 (8th Cir. 2011).

There is no evidence the ALJ failed to consider the entire record or acted improperly at the hearing. The ALJ asked Plaintiff several questions about her background and impairments, and he consulted the VE to help classify Plaintiff's past relevant work. (Tr. 61-63) It is also not clear why Plaintiff believes the ALJ's questioning of the VE, after Plaintiff testified, implies the ALJ "made up his mind . . . before Plaintiff testified." (Doc. 13, p. 12) Near the end of the hearing, the ALJ also reminded Plaintiff that he was holding the record open so she could submit records from 2010, and stated he would not make a decision until he reviewed those records. (Tr. 64) Since the ALJ allowed Plaintiff to develop a complete record and stated he considered the entire record, there is no reason to believe he prejudged Plaintiff's case. *See generally Mack v. Chater*, 121 F.3d 712 (8th Cir. 1997); *see also Isom v. Schweiker*, 711 F.2d 88, 90 (8th Cir.1983) (stating the ALJ corrected any bias shown at the hearing by allowing a complete record to be made).

Accordingly, the undersigned finds no basis for remand on this issue.

-6-

**B. Severe Impairments**

Plaintiff believes the ALJ should have included arthritis as a severe impairment. (Doc. 13, p. 15)

At step two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4); *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001). An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a); *Bowen v. Yuckert*, 482 U.S. 137 (1987) (O'Connor, J., concurring). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that an impairment or combination of impairments are severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). Severity is not an onerous requirement for the claimant to meet, *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989), but it is also not a toothless standard, and courts have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. *See, e.g., Page v. Astrue*, 484 F.3d at 1043-44.

A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. 20 C.F.R. §§ 404.1508, 404.1527.

The record does not show arthritis was a severe impairment. Plaintiff did not allege arthritis as an impairment during the disability determination process, and she did not present any medical evidence at the hearing to show arthritis caused her limitations. At the hearing Plaintiff testified she only takes asprin for arthritis since her arthritis was not "real severe." (Tr. 52-53) Her neck and musculoskeletal exams were consistently normal. (Tr. 531, 864-865, 900, 915, 1160, 1166, 1169, 1200) Dr. Morgan noted Plaintiff had some decreased range of motion in her neck, but did not indicate it would cause any limitations. (Tr. 860-862) Since there is no evidence Plaintiff's arthritis caused more than a slight limitation in performing basic work activities, the ALJ appropriately concluded her arthritis was non-severe. *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007).

The ALJ's determination at step two is based on substantial evidence.

### C. *Polaski Analysis*

Plaintiff contends the ALJ failed to consider the side effects of her medications, such as drowsiness and diminished concentration, on her ability to work. (Doc. 13, pp. 15-16)

In determining a claimant's RFC, "'the ALJ must first evaluate the claimant's credibility.'" *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2002)). An ALJ is required to consider all of the evidence relating to Plaintiff's subjective complaints, including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medications; and, (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

Assessing and resolving credibility issues is a matter that is properly within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (stating a court should not substitute

its own credibility opinion for that of the ALJ). As the Eighth Circuit has observed, "[o]ur touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). The court should, "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004).

The ALJ addressed the *Polaski* factors in the written decision, but partially discounted Plaintiff's allegations of disabling pain. Along with analyzing Plaintiff's credibility, the ALJ also addressed Plaintiff's side effects from medication, and he noted that Plaintiff did not discuss any side effects with her physicians and reported no side effects on her pain questionnaire. (Tr. 21, 25)

The ALJ identified Plaintiff's failure to follow-up with treatment, her improvement after treatment for pneumonia and a bacterial infection, her continued smoking habit despite her COPD diagnosis, and her admissions she could perform relatively normal daily activities as factors in discounting Plaintiff's subjective complaints. (Tr. 21-25) The ALJ also highlighted Plaintiff's efforts to find a job during the relevant time period, and he identified her attempt to manipulate her appearance by unnecessarily using a wheelchair for Dr. Morgan's exam as evidence she was not credible. (Tr. 24)  These were all valid reasons for discounting Plaintiff's claim of disabling conditions. *See e.g., Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000).

Accordingly, the ALJ's credibility determination is based on substantial evidence.

**D. RFC**

RFC is the most a person can do despite that person's limitations, and is assessed using all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of limitations. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is a medical question, therefore, an ALJ's determination concerning a claimant's RFC must be supported by some medical evidence that addresses the claimant's ability to function in the workplace. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). The ALJ is required to specifically set forth a claimant's limitations and to determine how those limitations affect her RFC. *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).

The ALJ's determination Plaintiff could perform the full range of light work is consistent with Plaintiff's treatment notes and the opinion evidence. After Plaintiff's recovery from pneumonia and a bacterial infection, she requested and received a release to return to work from her treating physician in July 2011. (Tr. 864-865) At the consultative exam, Dr. Morgan diagnosed Plaintiff with a history of COPD, although he did not note any pulmonary problems, and he opined Plaintiff's only limitations were mild. (Tr. 860-862) Dr. Sonntag and the non-examining consultants determined Plaintiff's impairments were non-severe. (Tr. 810, 826, 872, 880, 885)

The ALJ's determination is also supported by Plaintiff's own descriptions of her abilities. In her function report, Plaintiff stated "prior to pneumonia, I was fully functional." (Tr. 192) At the hearing, she testified her diverticulitis and gastrointestinal problems were controlled so long as she

watched her diet, and she suggested her mental problems were attributable to aging. (Tr. 49, 51, 54, 57, 60) She also discussed her job search, and shared she worked until April 2011. (Tr. 49, 808)

The ALJ appropriately concluded Plaintiff's bacterial infection and hypertension were controlled,  Plaintiff's mental conditions were non-severe, and Plaintiff's COPD was not disabling. (Tr. 22-24)

The ALJ's RFC determination is well supported by medical evidence and other substantial evidence.

**V. Conclusion**:

For the reasons and upon the authorities discussed above, the undersigned recommends affirming the ALJ's decision and dismissing Plaintiff's case with prejudice.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of September, 2015.

/s/   *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE